UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NOS. 22-20703-CIV-SCOLA/GOODMAN
22-20881-CIV-SCOLA/GOODMAN

FRANCISCO LAGOS MARMOL and
FERNANDO CARLOS VAN PEBORGH,

      Plaintiffs,

v.

KALONYMUS DEVELOPMENT PARTNERS,
LLC,

      Defendant.

_____/

KALONYMUS DEVELOPMENT PARTNERS,
LLC,

      Plaintiff,

v.

FRANCISCO LAGOS MARMOL and
FERNANDO CARLOS VAN PEBORGH,

      Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON BUYER'S MOTION
<u>TO SET PREJUDGMENT INTEREST AMOUNT AWARDED IN FINAL JUDGMENT</u>**

In this breach of contract action, Kalonymus Development Partners ("Kalonymus"

or "Buyer") seeks $161,728.12 in prejudgment interest. [ECF Nos. 183; 194].[1] Francisco Lagos Marmol and Fernando Van Peborgh (collectively, "Sellers") object to the relief requested. [ECF No. 188]. The parties filed supplemental submissions addressing this issue. [ECF Nos. 207; 208; 211; 213].

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for either an order or a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF No. 185]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant in part and deny in part** Kalonymus' request for prejudgment interest.

## I.      Background

Kalonymus brought an action to enforce its Member Interest Purchase Agreement ("Agreement") with Sellers requiring them to sell their interests in Best Peacock Inn, LLC, and compensate Kalonymus for damages. Sellers filed their own action, seeking a declaratory judgment that Kalonymus breached and/or anticipatorily breached the Agreement. [ECF No. 8]. The Court consolidated the two cases. [ECF Nos. 12; 13].

---

[1]      A breakdown of how Kalonymus arrived at this amount can be found at ECF No. 207, p. 3.

Judge Scola granted partial summary judgment in Kalonymus' favor on its breach of contract claims, but he denied summary judgment on Kalonymus' negligent misrepresentation claim and on the amount of monetary damages owed to Kalonymus. [ECF No. 137].

Following a two-day bench trial, Judge Scola issued a Verdict [ECF No. 162] and entered a Final Judgment [ECF No. 163]. He found that "Kalonymus ha[d] proven all the elements of its breach-of-contract claim, including that it [was] entitled to specific performance and was damaged as a result of [ ] Sellers' breach" and that it was "entitled to an award of damages in order to receive the benefit of the bargain had [ ] Sellers not breached the Agreement and had the parties closed in October of 2021." [ECF No. 162, p. 7].

Judge Scola determined that:

Kalonymus [was] entitled to (i) the specific performance as set forth in the Court's summary judgment order; (ii) damages totaling $1,553,245, assuming [ ] Sellers comply with their obligations as set forth [in the Verdict] and pledged at trial, or $2,586,533, if they don't; and (iii) its attorney's fees and costs as permitted by Section 8.3 of the Agreement.

*Id.* at 6–7.

Consistent with the Verdict [ECF No. 162], Judge Scola entered a Final Judgment which included the following terms:

1.    The Court enters judgment in [ ] Buyer's favor as to [ ] Sellers' claims in the 22cv20881 case.

2.      The Court enters judgment in [ ] Buyer's favor as to its breach-of-contract claims and in [ ] Sellers' favor as to [ ] Buyer's negligent misrepresentation claim in the 22cv20703 case.

3.      The parties must close on the sale of the property on or before November 27, 2023.

4.      [ ] Sellers must notify [ ] Buyer, on or before October 16, 2023, whether or not they are going to finance the credit half of the transaction as offered at trial and memorialized in the Court's verdict.

5.      If [ ] Sellers are willing and able to adhere to that financing commitment, the Court awards damages in [ ] Buyer's favor and against [ ] Sellers, jointly and severally, in the amount of $1,553,245, plus all interest due, for which sum let execution issue.

6.      If [ ] Sellers do not adhere to that commitment, the Court awards damages in [ ] Buyer's favor and against [ ] Sellers, jointly and severally, in the amount of $2,586,533, plus all interest due, for which sum let execution issue.

7.      The damages due [to] Buyer are to be paid by [ ] Sellers in the form of a reduction of the $5,150,000 sale price. As set forth in the verdict, if the transaction proceeds with [ ] Sellers' financing, the reduction in the sale price shall be subtracted from the cash portion of [ ] Buyer's contribution (50% of the $5,150,000 sales price) due at closing.

[ECF No. 163, p. 2 (footnote omitted)].

In a footnote, Judge Scola explained:

As set forth in the verdict, "[s]o long as [ ] Sellers are prepared to provide Kalonymus with financing substantially equivalent to the Newmark terms, Kalonymus's damages are $1,553,245, regardless of whether Kalonymus chooses to avail itself of [ ] Sellers' financing or not." [ECF No. 162, p. 6].

*Id.* at 2 n.2. As discussed in the Verdict, Newmark was a company through which "Kalonymus had made arrangements to finance 50% of the purchase cost of the property" at the time of the October 2021 closing. [ECF No. 162, p. 4].

After the entry of the Verdict [ECF No. 162] and the Final Judgment [ECF No. 163], the parties proceeded to close on the property on November 27, 2023. At the closing, Sellers provided financing; therefore, Kalonymus' monetary award is $1,553,245.00 (the lower of the two amounts listed in the Final Judgment [ECF No. 163]). [ECF No. 194, p. 4 n.2]. However, Sellers objected to prejudgment interest. As explained in Kalonymus' "motion to set prejudgment interest amount awarded in final judgment":

> When the parties proceeded to closing on November 27, 2023, as required by the Court's Verdict . . . [ECF No. 162] . . ., **Sellers objected to the inclusion of pre-judgment interest as part of the purchase-price reduction set forth on the draft closing statement** (though Sellers did not object to the inclusion of post-judgment interest).
>
> ***
>
> To facilitate the closing, **the Parties ultimately opted to escrow the amount of the prejudgment interest claimed by Buyer -- $161,728.121** -- pending either future agreement of the Parties or an Order of the Court.

[ECF No. 183, p. 2 (emphasis added)]. A copy of the executed escrow agreement is attached to Kalonymus' motion. [ECF No. 183-1].

Having failed to reach an agreement with Sellers, Kalonymus now seeks an award of $161,728.12 in prejudgment interest. [ECF No. 183]. The parties' arguments are addressed below.

## II.    The Parties' Initial Briefs

The parties dispute whether prejudgment interest was part of the Court's Final Judgment [ECF No. 163] award.

Kalonymus notes that it at all times demanded the payment of interest, including as early as the filing of the Complaint [ECF No. 1-1 in Case No. 22-cv-20881], which sought "all interest" in the wherefore clause. [ECF No. 183, p. 3]. It further notes that "the Court's Final Judgment includes reference to the recovery of interest[,]" (i.e., the Final Judgment [ECF No. 163] award includes "all interest due"). *Id.*

Kalonymus relies on Florida Supreme Court precedent and Fla. Stat. § 687.01, to support its request for prejudgment interest. *Id.* at 4 (citing *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)). It also cites cases in the Eleventh Circuit and this Court awarding prejudgment interest. *Id.* at 4–5 (citing *Sos v. State Farm Mut. Auto Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *19 (11th Cir. Aug. 30, 2023) and *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1257 n.12 (S.D. Fla. 2017)). "[Kalonymus] calculate[s] prejudgment interest from the date of the breach (when Sellers failed to close

on the [original] closing date in October of 2021) through the date of the Final Judgment." *Id.* at 5.

But Sellers maintain that Kalonymus has not shown entitlement to prejudgment interest. [ECF No. 188]. They note that "'[t]here are two prerequisites to the award of prejudgment interest as damages: (1) out-of-pocket pecuniary loss, and (2) a fixed date of loss.'" *Id.* at 2 (quoting *Albanese Popkin Hughes Cove, Inc. v. Scharlin*, 141 So. 3d 743, 747 (Fla. 3d DCA 2014)).

They argue that these two prerequisites are not present here. They note that the Final Judgment's $1,553,245.00[2] monetary award consists of: $1,322,850.00 in cost of capital; $175,028.00 in lost profits; $41,150.00 in duplicate expenses; and $14,217.00 in lost tax savings. *Id.* (citing Verdict [ECF No. 162]). They also note that "[t]he Court's Verdict . . . did not reach a specific finding of 'out-of- pocket pecuniary loss,' and did not fix a date certain for any loss on which prejudgment interest could be calculated" and that the "Final Judgment referred only to 'all interest due,' again without reference to any finding of 'out-of-pocket pecuniary loss' and without fixing a date of loss." *Id.* (citing [ECF Nos. 162; 163]).

---

[2]     The applicable monetary award is $1,553,245 (as opposed to the alternative amount of $2,586,533 included in the Final Judgment [ECF No. 163, p. 2]) because Sellers provided financing at the November 27, 2023 closing. [ECF No. 194, p. 4 n.2].

Sellers contend that because these two elements are missing from the Verdict [ECF No. 162] and Final Judgment [ECF No. 163], these two documents are "insufficient to support an award of prejudgment interest." *Id.* They posit that "had the Court intended to award prejudgment interest, one would expect a verdict or final judgment" similar to the one issued by Judge Scola in *Rensel*, where "the Court specifically fixed a date for each component of the plaintiff's damages, and specifically provided for prejudgment interest to be calculated from each date." *Id.* at 2–3 (citing *Rensel v. Centra Tech, Inc.*, Case No. 17-cv-24500, 2019 U.S. Dist. LEXIS 214868 (S.D. Fla. Dec. 13, 2019)).

They note that "the Final Judgment omitted any **specific reference** to prejudgment interest **despite Kalonymus having submitted a proposed Final Judgment providing for such an award**." *Id.* at 3 (emphasis added). They also point out that while Kalonymus' Complaint included "a general plea for 'all interest' . . . it did not make a demand for *prejudgment* interest and that the underlying contract did not provide for *prejudgment* interest." *Id.* (emphasis added).

According to Sellers, "[n]othing in the record reflects that any of the damages awarded to Kalonymus were the result of 'out-of-pocket pecuniary' losses suffered by Kalonymus." *Id.* at 3. They state that "at a minimum" cost of capital should be excluded from any calculation of prejudgment interest because "Kalonymus has not established,

and there is nothing in the record that shows how cost of capital fits within the ambit of *Argonaut* and its progeny as a 'pecuniary' loss." *Id.*

Sellers also contend that even if *some* of Kalonymus' awarded damages could be considered pecuniary losses, Kalonymus would still not be entitled to *any* prejudgment interest because there is no fixed date of loss. *Id.* at 4 ("[T]he dates of the alleged actual losses to Kalonymus are not the date of [ ] Sellers' breach -- indeed, it defies logic to suggest that all of the alleged losses were suffered in October 2021. . . . [E]ach category of damages awarded to Kalonymus necessarily would have to involve separate dates of loss, none of which have been fixed or determined by the Court, and none of which can be ascertained from the evidence in the record of this case.").

Lost profits in the instant case consist of net rental payments. "The Court found an entitlement to lost profits 'based upon a loss of $7,609 net profit per month for 23 months from October 2021 until [] trial.'" *Id.* at 4 (quoting Verdict [ECF No. 162, p. 5]; alterations in response). Sellers argue that "if lost profits qualify as a pecuniary loss under Florida law, . . . prejudgment interest would have to be calculated based on a lost profit of $7,609 from the date on which rent would have been due for *each* of those 23 months," *id.* at 4–5 (emphasis in original), as opposed to the October 2021 original-sale-date sought by Kalonymus. Thus, "if Kalonymus is entitled to prejudgment interest based on lost profits,

each month of lost profit must be calculated in accordance with Florida's official judgment interest rate from the date that each month's rent was due." *Id.* at 5.

Sellers argue that because dates of loss cannot be affixed to the remaining categories of damages, the Court cannot award prejudgment interest on them. *Id.* at 5. "Because there is no evidence in the record from which the Court can ascertain and fix the date on which Kalonymus suffered the cost of capital loss, prejudgment interest cannot be awarded on this damage." *Id.* Similarly, Sellers argue that a date of loss cannot be ascribed to duplicate expenses because "the record is devoid of any evidence of *when* Kalonymus actually paid those duplicate expenses." *Id.* at 6 (emphasis added).[3] Lastly, Sellers contend that the record reveals no date on which Kalonymus suffered lost tax savings. *Id.*

In its reply, Kalonymus states that "as the party awarded damages for [ ] Sellers' breach of contract, [it] unquestionably is entitled to prejudgment interest." [ECF No. 194, p. 2]. It maintains that the date of "each loss" is October 2021 because "'each loss' undisputedly flows from [ ] Sellers [sic] breach of contract which occurred in October of 2021." *Id.* Kalonymus further states that the Court has already determined its entitlement

---

[3]     Sellers also dispute whether there is record evidence that Kalonymus paid *any* expenses, let alone duplicate expenses. [ECF No. 188, p. 6]. But Judge Scola already determined that duplicate expenses was a category of damages for which Kalonymus was entitled to a monetary award. *See* Verdict [ECF No. 162, p. 5–6]. Therefore, the Undersigned will not revisit that issue.

to prejudgment interest and cites to the portion of the Final Judgment which states: "[T]he Court awards damages in [ ] Buyer's favor and against [ ] Sellers, jointly and severally, in the amount of $1,553,245, **plus all interest due**, for which sum let execution issue." *Id.* (quoting [ECF No. 163, p. 2 (emphasis in reply)]).

Kalonymus argues that the entire amount of monetary damages awarded to it constitute a pecuniary loss. *Id.* at 4 ("[T]he Court identified Kalonymus' pecuniary loss of $1,555,243 as a result of [ ] Sellers' breach[.]"). Addressing cost of capital, Kalonymus argues that "[it] had a vested property right to purchase [ ] Sellers' property in October 2021" and that "[a]s a result of Sellers' actions, Kalonymus suffered damages, including cost of capital damages, and are [sic] entitled to prejudgment interest on those damages." *Id.* at 5.

It further states that the date of loss is the same date its cause of action accrued (October 2021) because:

> As explained by the Florida Supreme Court in [*Bosem v. Musa Holdings, Inc.*], "it has long been the law in Florida that in contract actions, and in certain tort actions, once the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of cause of action." [46 So. 3d 42, 46 (Fla. 2010)] (quoting *Amerace Corp. v. Stallings*, 823 So. 2d 110, 116 (Fla. 2002) (Pariente, J., dissenting)). **Here, the date of the loss and the accrual of the cause of action are the same—the date in October of 2021 when [ ] Sellers' breached the [Agreement]**.

*Id.* at 6 (emphasis added; footnote omitted).

III.    **Supplemental Filings**

At the Undersigned's request (and in one instance *sua sponte*), the parties submitted supplemental filings addressing prejudgment interest. [ECF Nos. 207; 208; 211; 213]. In response to the Undersigned's request for more analogous case law [ECF No. 203], both sides acknowledged the somewhat unusual circumstances of this action and the lack of on-point cases.[4]

Sellers also filed a *sua sponte* notice, citing additional facts occurring after the November 27, 2023 closing. [ECF No. 211]. Specifically, Sellers noted that the buyer at the closing "was not Kalonymus, but instead two separate entities—Poinciana, LLC and 3667 Poinciana, LLC." *Id.* at 2. Sellers thus argue that:

Because Kalonymus was not the buyer, it did not incur any "cost of capital"

---

[4]    *See* [ECF Nos. 207, p. 2 n.1 ("After a diligent search, Kalonymus includes the above-referenced cases as closest to meeting the Court's request. **Kalonymus recognizes that the cases listed are not completely analogous to the facts in this action**." (emphasis added)); 208, p. 2–4 ("**Sellers have not found a case analogous to this one** in which cost of capital, allegedly incurred due to a delay in closing on a real estate transaction, was held to be an 'out-of-pocket pecuniary loss' or actual damages to which prejudgment interest was added."; "**Sellers have not located any case analogous to this one,** where a buyer of commercial real property is awarded lost profits based on missed rental income following a breach of a closing date[.]"; "**Sellers have not located any authority for whether 'duplicate expenses' incurred to close on real property would constitute an 'out-of-pocket pecuniary' loss** within the meaning of *Argonaut*[.]"; "**Sellers have used the broadest possible search terms but have not found any authority** for the proposition that lost tax savings constitute an out-of-pocket pecuniary loss for which prejudgment interest may be added or that prejudgment interest may be awarded on this type of damages absent proof of a date of loss that precedes the judgment." (emphasis added; footnote omitted)).

(specifically, the "cost of equity") expense, and did not pay duplicate expenses in preparation for closing. Also, because Kalonymus did not purchase the shares of Best Peacock Inn, LLC (which is the owner of the property that generates the rents), Kalonymus has not lost any rental profits.

*Id.* (footnote omitted).

In the interest of fairness, the Undersigned provided Kalonymus with an opportunity to file a response to Sellers' notice. [ECF No. 212]. In its response, Kalonymus points out that these facts were known to Sellers at the time of their opposition to the prejudgment interest motion [ECF No. 188], which was filed after the closing. [ECF No. 213, p. 1]. Kalonymus does not otherwise dispute the facts cited in Sellers' notice.

It further states that "the transaction was always structured in anticipation of a potential assignment at closing" and that Sellers have argued at both the summary judgment stage and in their notice that "Kalonymus was not the party that was injured by their actions in failing to close pursuant to the [Agreement] because Kalonymus intended to assign its interest in the [Agreement] at closing." *Id.* at 2.

Kalonymus points out that Judge Scola

rejected [ ] Sellers' argument, that Kalonymus was not the injured party, on Summary Judgment and in the Verdict. *See* ECF No. 137 at 11 ("The Court readily concludes that regardless of which entity was ultimately going to take ownership of Best Peacock, [ ] Buyer did not receive the benefit of its bargain and was, therefore, damaged as a result of the breach."); ECF No. 162 at 5–6 ("But Zeff's testimony established that even though he had planned to assign his right to purchase the property to the Poinciana SPE's, he was not obligated to do so. If another entity had offered him additional

13

> monies to assign the purchase contract to that entity he could have done so
> . . . and based on the credible evidence presented, the Court concludes that
> Kalonymus established damages resulting from the breach in the amount
> of **$1,553,245**.").

*Id.* (emphasis in notice). Thus, Kalonymus argues that the Court has **already** determined

that "Kalonymus was the injured party as a result of [ ] Sellers['] failure to close, suffered

damages as a result thereof, and is entitled to prejudgment interest." *Id.*

## IV.   Analysis

In diversity cases, state law governs an award of prejudgment interest. *Royster Co.*

*v. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir. 1984). Under Florida law, "[i]t is well

settled that a plaintiff is entitled to prejudgment interest **when it is determined that the**

**plaintiff has suffered an actual, out-of-pocket loss at some date prior to the entry of**

**judgment**." *Alvarado v. Rice*, 614 So. 2d 498, 499 (Fla. 1993) (citing *Argonaut*, 474 So. 2d at

215) (emphasis added).

As the Eleventh Circuit explained in *Sos*:

> Florida adheres to the "loss theory" of prejudgment interest. *Bosem*[, 46 So.
> 3d at 45]. Under this theory, **prejudgment interest is a mandatory**
> **component of a plaintiff's compensatory damages in any case in which**
> **the plaintiff's loss is pecuniary in nature, including those grounded in**
> **contract**. *See Argonaut*, 474 So. 2d at 214–15; *Summerton v. Mamele*, 711 So.
> 2d 131, 133 (Fla. [5th DCA] 1998) ("The trial court has no discretion with
> regard to awarding prejudgment interest and must do so applying the
> statutory rate of interest in effect at the time the interest accrues." (citing
> *Argonaut*, 474 So. 2d at 215)).
>
> In a breach of contract action, prejudgment interest is awarded "from the

date of the loss or the accrual of the cause of action." *Bosem*, 46 So. 3d at 46
(quoting *Amerace Corp. v. Stallings*, 823 So. 2d 110, 116 (Fla. 2002) (Pariente,
J., dissenting)). Generally, this is the date on which payment was due under
the contract. *Columbia Cas. Co. v. S. Flapjacks, Inc.*, 868 F.2d 1217, 1219 (11th
Cir. 1989).

2023 WL 5608014, at *19 (emphasis added).

### a.    Sellers' Preliminary Arguments

Sellers note that neither the Verdict nor the Final Judgment include a specific

finding of pecuniary loss or a fixed date of loss. [ECF No. 188, p. 2 ("The Court's Verdict

[DE 162] did not reach a specific finding of 'out-of-pocket pecuniary loss,' and did not fix

a date certain for any loss on which prejudgment interest could be calculated. As well,

the Court's Final Judgment referred only to 'all interest due,' again without reference to

any finding of 'out-of-pocket pecuniary loss' and without fixing a date of loss. [DE

163].")].

But there is no requirement that the damages awarded be specifically identified as

"pecuniary" in the Verdict or the Final Judgment. Moreover, "[t]here does not have to be

a special verdict as to the date of loss, where the loss is established by the verdict and the

pertinent date can be *ascertained* from the evidence." *Pace Prop. Fin. Auth., Inc. v. Jones*, 24

So. 3d 1271, 1272 (Fla. 1st DCA 2009) (emphasis supplied); *see also Argonaut*, 474 So. 2d at

215 ("Once a verdict has liquidated the damages as of a date certain, computation of

prejudgment interest is merely a mathematical computation. There is no 'finding of fact'

needed. Thus, it is a purely ministerial duty of the trial judge or clerk of the court to add the appropriate amount of interest to the principal amount of damages awarded in the verdict.").

Additionally, the Undersigned is not persuaded by Sellers' argument that Kalonymus must specifically plead *prejudgment* interest as opposed to pleading "all interest" in its Complaint. [ECF No. 188, p. 3 ("[W]hile Kalonymus made a general plea for 'all interest,' Kalonymus tacitly concedes that it did not make a demand for prejudgment interest and that the underlying contract did not provide for prejudgment interest.")]. That argument is not persuasive because "all interest" would necessarily include prejudgment interest. *See McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 681 (10th Cir. 1989) ("[T]he [district] court mischaracterized the plaintiffs' Rule 60(a) motion as an original request for prejudgment interest. Actually, **the plaintiffs had requested relief in the form of "interest" in their complaint. This original generic reference to interest encompasses all interest, both pre- and post-judgment**." (emphasis added)).

Moreover, a contractual provision providing for prejudgment interest is not a prerequisite to an award of prejudgment interest under Florida law. *See, e.g., Bosem*, 46 So. 3d at 43–46 ("find[ing] that the [appellate court] incorrectly reversed the trial court's award of prejudgment interest" in non-contract "action for injunctive relief, fraud, false advertising, and compensatory damages"); *Thomas Cook UK Ltd. v. Maesbury Homes, Inc.*,

280 F.R.D. 649, 652 n.3 (M.D. Fla. 2012) ("In this diversity jurisdiction case, [the] [p]laintiff is entitled to prejudgment interest at the rate provided for by Florida law. Fla. Stat. § 687.01 (**rate in absence of contract is provided in § 55.03**)" (emphasis added)).

Finally, the Undersigned does not read too much into the Final Judgment having omitted any *specific* reference to prejudgment interest despite Kalonymus having included prejudgment interest in its proposed final judgment because Judge Scola's Final Judgment provides for a monetary amount "plus **all** interest due." [ECF No. 163, p. 2 (emphasis added)]. The phrase "all interest due" would necessarily include prejudgment interest, provided, of course, that it is due.

Having disposed of Sellers' preliminary arguments, the Undersigned is left with Sellers' principal argument, that Buyer is not entitled to prejudgment interest because: (1) the monetary damages awarded to Buyer are not out-of-pocket pecuniary losses and (2) there is no ascertainable fixed date of loss. *See* [ECF No. 188, p. 3 ("Nothing in the record reflects that any of the damages awarded to Kalonymus were the result of "out-of-pocket pecuniary" losses suffered by Kalonymus.")]; *id.* at 4 ("[E]ach category of damages awarded to Kalonymus necessarily would have to involve separate dates of loss, none of which have been fixed or determined by the Court, and none of which can be ascertained from the evidence in the record of this case.")].

###### b.     Pecuniary Loss

As noted above, Judge Scola awarded monetary damages to Kalonymus for: cost of capital, lost profits, duplicate expenses, and lost tax savings. [ECF No. 162, pp. 5–6]. The Florida Supreme Court limits prejudgment interest to pecuniary damages: "We conclude that this Court's precedent has remained unchanged for over one century, and that prejudgment interest is a matter of right under the prevailing 'loss theory' of recovery for **pecuniary damages, i.e., damages for economic or tangible losses**." *Bosem*, 46 So. 3d at 43 (emphasis added). In contrast, "prejudgment interest is not available on non-economic damages, such as the damages to reputation." *Sirer v. Aksoy*, No. 21-CV-22280, 2023 WL 3166453, at *11 (S.D. Fla. May 1, 2023).

Sellers take issue with whether Kalonymus *actually* incurred some of the awarded monetary losses, but Judge Scola made a factual finding that Kalonymus established those damages. *See* [ECF No. 162, p. 6 ("Assuming [ ] Sellers are ready, willing, and able to fulfill their pledge to finance the transaction under the same terms Newmark had offered in October 2021, and based on the credible evidence presented, the **Court concludes that Kalonymus established damages resulting from the breach in the amount of $1,553,245**." (emphasis added)].

Moreover, the Undersigned will not entertain Sellers' argument that Kalonymus did not actually incur some of the damages awarded because a third party was the buyer

at the 2023 closing. In the Verdict, Judge Scola determined that Kalonymus was entitled to the benefit of its bargain with Sellers:

> Kalonymus never assigned its rights in the Agreement to the [single purpose entities]. Therefore, **the benefit of the bargain that was struck in the Agreement belonged to Kalonymus and not any other entity**. **Kalonymus is therefore entitled to an award of damages in order to receive the benefit of the bargain had [ ] Sellers not breached the Agreement and had the parties closed in October of 2021**.

> Kalonymus has established damages in the amount of $1,553,245. This sum is based upon [ ] Seller's offer to provide financing to Kalonymus under the same terms as offered by Newmark in October 2021.

*Id.* at 6 (emphasis added).

The Undersigned finds that *all* of the monetary damages awarded to Kalonymus are pecuniary. The first damages item is cost of capital. Kalonymus' expert explained that "[c]ost of capital in a standard real estate investment is comprised of two components: the cost of debt and the cost of equity." [ECF No. 98-1, p. 120]. "The cost of debt for a given investment is . . . the interest rate that the subject lender is willing to charge on the loan for that investment." *Id.* at 121. "The cost of equity is the required return demanded by equity investors." *Id.* at 122. This is a tangible, economic loss.[5]

---

[5]     Sellers suggest that the cost of capital is already included in an award of prejudgment interest. [ECF No. 208, p. 3 ("[O]ther courts have held that cost of capital and prejudgment interest are essentially the same remedy.")]. To the extent this argument (raised for the first time in a supplemental filing) is properly before the Court, the Undersigned is not persuaded by it. As noted above, the cost of capital in the instant case,

Lost profits refer to the net rental income which Kalonymus would have otherwise received had the closing occurred in October 2021. [ECF No. 98, p. 129-30]. Again, this is an economic harm which Kalonymus suffered as a result of Sellers' failure to proceed with the October 2021 closing.

Duplicate expenses are comprised of: Appraisal, Phase I Environmental Site Assessment, Property Condition Report, Zoning Report, and Investor Counsel Legal Fee. [ECF No. 162, p. 5]. These are tangible, monetary costs.

Finally, lost tax savings refer to Kalonymus' inability to take advantage of favorable tax treatment under The Tax Cuts and Jobs Act, passed in 2017 (and phased out in 2023). [ECF No. 98-1, pp. 132–33]. The difference between what Kalonymus' tax burden would have been had the sale proceeded in October 2021 as opposed to the later closing date is also an economic loss.

---

was specifically defined by Kalonymus' expert as including both "the cost of debt and the cost of equity." [ECF No. 98-1, p. 120].

Prejudgment interest, on the other hand, "is available to compensate a party for the wrongful deprivation of property, and to help make an injured party whole." *Sirer*, 2023 WL 3166453, at *11 (citing *Lipsig v. Ramlawi*, 760 So. 2d 170, 192 (Fla. 3d DCA 2000)). Given Kalonymus' expert's definition of cost of capital, the Undersigned cannot conclude that the cost of capital and prejudgment interest are the same thing in the instant case.

Because all of the categories of damages awarded by Judge Scola are economic in nature, the Undersigned finds that the pecuniary loss requirement is met as to each category of awarded damages.

### c.  Date of Loss

"Florida law . . . link[s] the date prejudgment interest begins to accrue to the date the plaintiff suffered the pecuniary loss for which the plaintiff is being compensated." *Arizona Chem. Co., LLC v. Mohawk Indus., Inc.*, 197 So. 3d 99, 102 (Fla. 1st DCA 2016). "[The] [p]laintiff is to be made whole **from the date of the loss** once a finder of fact has determined the amount of damages and [the] defendant's liability therefor." *Argonaut*, 474 So. 2d at 215 (emphasis added). Here, with one exception (lost profits), the dates of losses for monetary damages awarded to Kalonymus are not ascertainable from the record.

Kalonymus does not elaborate on when it would have incurred its cost of capital or lost tax savings. The Court also awarded Kalonymus duplicate expenses which consist of: Appraisal, Phase I Environmental Site Assessment, Property Condition Report, Zoning Report, and Investor Counsel Legal Fee. [ECF No. 162, p. 5]. These are tangible expenses which would be incurred on dates certain but, again, Kalonymus does not cite to record evidence (or any evidence) showing when these expenses were incurred.

Duplicate expenses are tangible costs. Kalonymus should be able to point to an invoice, a receipt, a canceled check, or some other form of proof of when each of these duplicate expenses were incurred. But Kalonymus does not do so. Thus, it is not possible for the Court to determine the date of loss for most of the monetary damages awarded to Kalonymus.

The pertinent date is the date when the loss was incurred:

> Whether the case sounds in tort or contract, **when prejudgment interest is proper, it is to be awarded from the date of the plaintiff's actual loss**, be that loss a diminution in the value of the plaintiff's property, **a payment the plaintiff has made to a third party**, or some other form of pecuniary loss for which prejudgment interest is authorized.

*Arizona Chem. Co., LLC*, 197 So. 3d at 104–05 (citing *Argonaut*, 474 So. 2d at 214–15; *Bosem*, 46 So. 3d at 46) (emphasis added).

Here, other than citing the initial closing date of October 2021 as the blanket date for all losses, Kalonymus does not point to any dates when it *actually* incurred its cost of capital losses, its duplicate expenses, or its lost tax savings. Therefore, the Undersigned finds that as to those categories of monetary damages, Kalonymus is **not** entitled to prejudgment interest *from the date of the original closing (October 2021)* because it is unclear *when* these losses were incurred and Kalonymus has not cited to record evidence suggesting that these losses were incurred on the date of the initial October 2021 closing.

The *exact* date (or dates) on which pecuniary losses were incurred is not required. "Florida law supports the proposition that prejudgment interest can be awarded properly from the **latest possible date of loss**." *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 795 (11th Cir. 2005) (emphasis added). But here, Kalonymus does not supply this latest-possible date for any of its awarded monetary damages.

"[P]rejudgment interest attaches as an incident of damages when it is ascertained that money ought to have been paid at a particular time." *Id.* at 794 (citing Florida Jurisprudence § 92 (2d ed.2005)). Kalonymus insists that prejudgment interest should be calculated from the October 2021 closing date for all monetary damages awarded. But, given the nature of the monetary damages awarded by the Court -- cost of capital, *duplicate* expenses (in the form of appraisals, environmental site assessment, property condition report, zoning report, investor counsel legal fee and lender counsel legal fees) and lost tax savings -- Kalonymus would likely not have incurred those losses at the time of the would-be closing in October 2021, but at some later point in the future.

The Undersigned is not saying that Kalonymus has forfeited its entitlement to prejudgment interest on cost of capital, duplicate expenses, or lost tax savings. Instead, by failing to elaborate on when these losses were incurred and insisting that prejudgment interest for all damages be calculated from the original, October 2021 closing date, Kalonymus has failed to provide the Court with a basis from which to calculate the dates

of these losses (and if exact dates are unavailable, then the last possible date for these losses).

"In the event that a court cannot ascertain the date upon which damages were liquidated, 'Florida law supports the proposition that prejudgment interest can be awarded properly from the latest possible date of loss.'" *Cohen v. Burlington Inc.*, No. 18-CV-81420, 2019 WL 1585100, at *3 (S.D. Fla. Apr. 12, 2019) (quoting *SEB S.A.*, 148 F. App'x at 795–96).

In *Albanese Popkin Hughes Cove, Inc.*, the date of loss was not ascertainable. 141 So. 3d at 747 ("[I]t simply cannot be determined from the record *when* the particular pecuniary losses awarded by the jury occurred. The [plaintiffs] alleged almost every portion of their home was damaged due to improper design and construction." (emphasis in original)). Thus, the appellate court concluded that "the only possible date that liquidated the [the plaintiff's] claim for prejudgment interest purposes was the date the jury rendered its verdict." *Id.* at 747. The Undersigned similarly concludes that because Kalonymus has not provided the Court with record evidence for when the costs of capital, duplicate expenses, and lost costs savings were incurred, the Court should award Kalonymus prejudgment interest from the date of the verdict (***not*** the October 2021 closing) for these three categories of monetary damages.

Here, Judge Scola issued his Verdict [ECF No. 162] on September 26, 2023 and issued the Final Judgment [ECF No. 163] on October 11, 2023.[6] Thus, for the monetary damages awarded for cost of capital, duplicate expenses, and lost tax savings, the Court should apply *Albanese Popkin Hughes Cove, Inc.* and award Kalonymus prejudgment interest for the 15-day period between the Verdict and the Final Judgment.

Unlike the aforementioned losses, the dates of loss on **lost profits** (net rental income) *are* ascertainable from the record. The fixed dates for when Kalonymus would have incurred its lost profits are readily ascertainable and addressed in the Verdict [ECF No. 162]. As explained in the Verdict, "[t]he Lost Profits total is calculated based upon a loss of $7,609 net profit per month for 23 months from October 2021 until [the] trial." *Id.* at 5. Thus, Kalonymus' lost profits would have accrued over time, on a monthly basis, between October 2021 and the September 2023 trial.

The Court awarded Kalonymus $175,028 in lost net rental income. However, as Sellers note, Kalonymus did not incur this amount in the form of a lump sum in October 2021, when Sellers failed to close. [ECF No. 188, p. 5]. Rather, Kalonymus would have received net rental payments on a monthly basis. Prejudgment interest on these net rental

---

[6]     The docket reflects that the Verdict was *entered* on September 27, 2023 (but issued on September 26, 2023) and the Final Judgment was *entered* on October 12, 2023 (but issued on October 11, 2023). Whether the Court uses the dates of issuance or the dates of entry, it is the same 15-day window between the Verdict [ECF No. 162] and the Final Judgment [ECF No. 163].

payments should therefore also be calculated in the manner in which they would have been earned.

As one Florida appellate court explained:

In cases where the application of prejudgment interest involves a series of payments consisting of some past due, **the amount of prejudgment interest is to be "accurately computed by: (1) determining when each progress payment would have become due if the contract had been performed as agreed; (2) calculating the interest on each progress payment from the date it would have become due; and (3) totaling the interest due on each progress payment."** [*Nat'l Educ. Ctrs., Inc. v. Kirkland*, 678 So. 2d 1304, 1306 (Fla. 4th DCA 1996)] (quoting *Metropolitan Dade Cnty. v. Bouterse, Perez & Fabregas Architects Planners, Inc.*, 463 So. 2d 526, 527 (Fla. 3d DCA 1985)).

*Langsetmo v. Metza*, 335 So. 3d 708, 711 (Fla. 4th DCA 2022) (emphasis added).

### d.     Sellers' Request for Fees and Costs

At the conclusion of their response, Sellers make a one-sentence request for an award of attorney's fees and costs for having to respond to the instant motion. [ECF No. 188, p. 7]. That request should be **denied** for several reasons.

First, a request for relief must be made by *motion. See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for [affirmative relief] simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Second, the request is not supported by any legal authority. *See Flanigan's Enterprises, Inc. of Ga. v. Fulton Cnty., Ga.*, 242 F.3d 976, 987 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in

support" of the argument). Finally, there is no certificate of conferral as required by the Local Rules. Accordingly, the Undersigned **respectfully recommends** that Sellers' request for fees and costs be **denied**.

## V.     Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the Court **grant in part and denied in part** Kalonymus' Motion [ECF No. 183]. The Court should award Kalonymus prejudgment interest on its lost profits (net rental income) in the same manner as the monthly net rental income would have been received. The Court should award Kalonymus prejudgment interest on the remaining damages (cost of capital, duplicate expenses, lost tax savings) from the date of the Verdict to the date of the Final Judgment (15 days). Kalonymus should also be required to submit a new prejudgment interest calculation in accordance with these recommendations.

The Undersigned also **respectfully recommends** that Sellers' request for fees and costs for responding to the instant motion be **denied**.

## VI.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties

from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on February 23, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record

28